Elaine L. CHAO, Secretary of Labor United States Department of Labor, Plaintiff,

v.

VIDTAPE, INC., Inventive Technology Systems, Inc., Mohinder Singh Anand, Satinder Singh Anand, and Arjan Singh Anand, Defendants.

No. CV 98–3359(ETB).

United States District Court, E.D. New York.

April 22, 2002.

Evan Reid Barouh, Department of Labor, Office of the Solicitor, New York City, for Plaintiff.

Jerold D. Wolin, Wolin & Wolin, Jericho, NY, for Defendants.

## AMENDED MEMORANDUM OPINION, ORDER AND JUDGMENT

BOYLE, United States Magistrate Judge.

The Secretary of Labor (hereinafter "Plaintiff" or "Secretary") commenced this action on May 1, 1998, pursuant to Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("the Act"), after an investigation of the labor practices of the defendants. This court held a bench trial on April 23, 2001 to May 1, 2001, and the parties gave summations on October 18, 2001. At the conclusion of the trial, all back wage claims against Inventive Technology Systems, Inc. ("Inventive") were dismissed. This court granted judgment in favor of the Secretary on March 29, 2002.

On April 9, 2002, the secretary moved, pursuant to Rule 59(e) to amend this court's judgment dated March 29, 2002. In particular, the Secretary moved: (1) to remove the award of pre-judgment interest; (2) to include violations of 29 U.S.C. § 215(a)(1) in the judgment; and (3) to rescind the award of $11,000 in civil money penalties for child labor violations. Defendants do not oppose the Secretary's motion. The Secretary's motion is granted. This Amended Memorandum Opinion, Order and Judgment reflects the requested modifications of the Memorandum Opinion, Order and Judgment, dated March 29, 2002.

The complaint, which was amended on July 20, 2000, alleges that from the period of May 1, 1995 to approximately June 10, 1997, the corporate defendants Vidtape, Inc. ("Vidtape") and Inventive and the individual defendants Mohinder Singh Anand ("Mohinder"), Satinder Singh Anand ("Satinder") and Arjan Singh Anand ("Arjan") willfully violated various provisions of the Act. These violations include: (1) failing to pay employees proper minimum wage; (2) failing to pay employ-ees adequate overtime wages; (3) employing a child in violation of the child labor provision; (4) violating the "hot goods" provision of the Act by putting in the stream of commerce goods manufactured in violation of these laws; and (5) violating the Act's record-keeping provisions. The Secretary seeks an injunction to prevent defendants from future violations of the Act, and a judgment ordering defendants to pay: (1) minimum wage compensation in the amount of $50,649.25; (2) overtime wages in the amount of $70,716.30; (3) liquidated damages in the amount of $121,365.55; and (4) costs. (See Amended Complaint; Plaintiff's Revised Exh. 21a and 22a.) This memorandum opinion and order constitutes the findings of fact and conclusions of law pursuant to Rule 52, Fed.R.Civ.P.

## FINDINGS OF FACT

### A. Introduction

Defendant Vidtape is a New York corporation incorporated in January, 1988. Defendant Inventive is a Delaware corporation incorporated on June 18, 1997. Prior to April, 1998, Vidtape manufactured and duplicated videocassette tapes. On February 26, 1998, Vidtape sold its manufacturing operation to Inventive. (Defendants' Exh. L.) Currently, Inventive manufactures and duplicates videocassettes, while Vidtape markets and sells Inventive's product. Vidtape and Inventive were located at the same property in West Babylon, New York and are currently located at the same property in Farmingdale New York. (T. 732–733, 752.)

Defendant Mohinder Singh Anand is the president, sole officer, and sole shareholder of Vidtape. (T. 565, 723, 765.) Satinder Singh Anand, Mohinder's brother, was formerly employed at Vidtape, and is currently the president of Inventive. Arjan Singh Anand, the father of Mohinder and Satin-

der, was never employed by Vidtape, but currently works as Inventive's general manager. (T. 713–716.) The Nihang Nivas trust is the sole shareholder of Inventive's stock. Arjan is the trustee of the Nihang Nivas trust, and the beneficiaries of the trust are Mohinder's wife, children, and mother. Satinder is also a beneficiary of the trust. (T. 599.)

## B. Employer Status of the Individual Defendants

### 1. Mohinder Singh Anand

Mohinder, the president of Vidtape, controls and manages the operations at his company. He hired employees, terminated employees, set wage rates, set Vidtape's pay system, and signed Vidtape pay checks. He also supervised employees. (T. 567, 568, 606, 725, 774, 569, 572, 776, 572.)

### 2. Satinder Singh Anand

Employees testified that Satinder gave them work assignments and supervisory directions. Satinder hired some of the Vidtape employees. (T. 348–349, 726; Plaintiff's Exh. 13, Kumar dep. at 13–14, 27–28.) Employees reported to Satinder in the absence of Mohinder. (T. 62.) Satinder directed some employees to report to work on Sundays and he directed employees not to report to work after the Department of Labor commenced its investigation. (T. 315, 117.) Satinder also had the authority to sign checks for Vidtape and did so when Mohinder was unavailable. (T. 763, 758, Defendants' Exh. A.) The court credits this testimony.

Satinder testified that he was not an employer of Vidtape and that he only worked there on commission as its salesman. He stated he never fired employees, never set work hours or work schedules, never directed or supervised employees, and never dealt with payroll issues. (T. 721–726.) The court does not credit this testimony by Satinder. It is undisputed that Satinder is the current president and employer of Inventive, the portion of the enterprise that manufactures the videotapes and employs the majority of the minimum wage employees.

### 3. Arjan Singh Anand

Arjan, the father of Mohinder and Satinder, has never been a shareholder, corporate officer, or employee of Vidtape. (T. 713, 715.) He testified that he never gave orders, hired, fired, or set policies for employees. (T. 713–714, 717.) Arjan did visit his sons at work during the midday and discussed financial matters with them at lunch. (T. 713, 719.) Hardeep Anand testified that Arjan brought lunch for his sons a few days a week and that during the time he was at the office, he read a religious book. (T. 652.) The court credits this testimony.

Vidtape employees testified that they viewed Arjan as a "boss." (T. 270, 149, 288, 309, 333, 398, 477.) This testimony is credited. Occasionally, Arjan directed employees as to their jobs and gave them videotapes to be duplicated. (T. 50, 309, 333, 404, 437, 454–455.) This testimony is not credited.

Arjan is currently employed part-time as Inventive's general manager, where he maintains Inventive's inventory and procures spare parts. (T. 716.)

## B. Enterprise

Vidtape manufactured videotapes at its factory in West Babylon. Inventive was formed on June 18, 1997, days after the Department of Labor commenced its formal investigation of Vidtape. Inventive began manufacturing videotapes on April 30, 1998, one day before the Department of Labor filed its complaint in this action. (Defendants' Exh. G.)

Vidtape sold its manufacturing operations to Inventive for $175,000. (T. 729, Defendants' Exh. L.) The book value of the assets was $120,000. (T. 785.) To pay for this, Inventive assumed Vidtape's $175,000 Keybank corporate bank loan. (T. 782–786, 878, Defendants' Exh. L, P–T.) Mohinder and Vidtape are guarantors of this loan. (T. 756, Defendants' Exh. P–T.) The asset sale agreement did not include warranties of merchantability or fitness. (T. 752, Defendants' Exh. L.)

Vidtape is Inventive's primary customer, with approximately 90% of Inventive's product marketed by Vidtape under Vidtape's label. (T. 613, Defendants' Exh. M.) Vidtape sales are over $500,000 annually and Vidtape and Inventive ship their product in interstate commerce. (*See* Letter of Jerold Wolin dated Oct. 29, 2001; T. 571–572, 615; Plaintiff's Exh. 12.)

When Inventive began its manufacturing operations, Vidtape employees resigned and were hired as Inventive employees. They signed a waiver stating:

> I [name], of [address] hereby acknowledge that I am resigning as an employee of Vidtape, Inc. as of April 30, 1998. I further acknowledge that during the course of my employment with Vidtape, Inc. I have had no claims for past due wages, or anything else. My period of employment with Vidtape, Inc. has been satisfactory.
>
> This acknowledgment is being signed by me voluntarily and of my own free will. There has been no pressure exerted upon me by anyone to sign this document. The contents of this document have been translated for me in [language], which is my native language.

(Defendants' Exh. G.) Employees observed no change between employment at Vidtape and employment at Inventive, other than a different corporate name on their pay check. (T. 367–368, 397.) The court credits this testimony.

## D. Knowledge of Fair Labor Standards Act

Since the early 1990s, Mohinder had knowledge of minimum wage and overtime laws. (T. 590, 609–610.) Specifically, he knew that employers must pay employees one and a half times their hourly rate when they worked over forty hours per week, that the minimum wage was $5.15 at the time of his deposition, and that the law required employers to keep time cards. (T. 589 590, 609–610.) Vidtape posted a Department of Labor poster in the lunchroom. (T. 587.) The court credits this testimony.

Employees testified that after the Department of Labor commenced its investigation, Mohinder held a meeting where he instructed Vidtape employees to tell investigators that their work schedule was 8:30 a.m—5:00 p.m., Monday—Friday. He also instructed employees to tell investigators that they were paid the proper minimum wage of $4.25 per hour and that they received overtime wages at a rate of one and one-half their regular rate. (T. 358–359, 406.) The court credits this testimony of employees and does not credit the conflicting testimony of Mohinder.

## E. Vidtape's Record–Keeping Practices

Prior to June 10, 1997, Vidtape did not maintain proper records as required by the F.L.S.A. Employees recorded their hours using time cards when they arrived in the morning and when they left at the end of the day. Hardeep Anand, Vidtape's bookkeeper, testified that Vidtape maintained these time cards for approximately two weeks after it issued employee paychecks. If no corrections to employee wages were necessary, she discarded the time cards. (T. 574.) The latter testimony is not credited. Mohinder directed her to discard the time cards. (T. 780–781.) After June 10, 1997, the date the Department of Labor began its formal investiga-

tion, Vidtape began preserving its time cards. (T. 781–782.)

Vidtape's payroll records for 1995, 1996, and part of 1997 show that Vidtape employees received two pay checks per month. (*See* Plaintiff's Exh. 2, 3, 4.) Vidtape's two pay periods during this time were the first to fifteenth day of the month, and the sixteenth to last day of the month. (*See id.;* T. 586, 796–797.) Vidtape's payroll records for this period did not contain the employees' hourly rates, number of hours worked per day, the number of hours worked per week, or the number of hours worked for each bimonthly pay period. (*See* Plaintiff's Exh. 2, 3, 4, T. 880–881.) No other records containing this information were maintained or preserved by Vidtape. (T. 573.)

Vidtape paid most employees by check. On pay day, employees received a pay check, but no pay stub or other information that indicated the hourly rate, hours worked, gross pay, or amount of deductions taken.[1] (T. 20–21, 46, 81–82, 144, 210, 240, 286, 307, 408, 575–576, 689.)

### F. Testimony of Plaintiff's Witnesses

At trial, twenty-one former Vidtape employees testified for the Secretary as to the hours they worked and the pay they received. These employees testified in English, Spanish, and Punjabi.

### 1. Work Schedule

The employees testified that they typically worked from 8:30 a.m. to 7:00 p.m., Monday through Saturday. (T. 21, 47, 62–63, 79, 109–110, 145–146, 210–211, 237–239, 249–251, 265, 283, 306–307, 318–319, 330–331, 347–348, 352, 400, 431, 452, 472.) They took thirty minute lunch breaks and had one or two short breaks as well. (T. 63, 145, 210–211, 238, 266, 352, 400.) Some employees also worked on Sundays. (T. 110, 147, 211, 282, 308, 330, 335, 353, 401, 431, 452, 473.) This consistent testimony indicates that employees worked an average of sixty hours per week and the court credits this testimony offered by the Secretary.

Many of the employees traveled together to and from work on the Long Island Railroad. Vidtape transported its employees to and from the train station in a company van. (T. 331–332, 347–349, 401, 772–773.) The court credits this testimony.

### 2. Hourly Wage and Overtime

The employees testified that their wage was $4.00 per hour, and $3.50 per hour after taxes. (T. 19–20, 78, 98, 433.) Some employees testified that Vidtape never told them what wage the company paid its employees. (T. 143, 217, 245, 264.) Beginning about June 10, 1997, immediately following the commencement of the Department of Labor investigation by a visit to the defendants'. premises, employees received wages of $4.75 per hour, which was the statutory minimum wage at that time. The employees also testified that they did not receive overtime pay prior to June 10, 1997. (T. 65, 67, 79, 99.)[2] The court credits this testimony.

---

1. Three plaintiff witnesses, however, testified to cash payments in whole or in part. Muhammed Kashif testified that he and his friend "Omer" were paid $3.50 per hour in cash, "off the books." (T. 35, 46.) Two others stated that after working forty hours, the additional hours were paid in cash at $3.50 per hour. (T. 382, 435.)

2. Akhtar Majeed Khan testified that he received an hourly rate of $8.00 per hour for all hours he worked. (T. 65, 62, 67.) He worked as a "production controller / maintenance" worker. (T. 61.) His duties included maintaining and repairing the video loading machines, preparing paperwork for shipping, and supervising the warehouse in the absence of Malkit Singh. He did not perform tasks such as duplication or packaging of videotapes. (T. 68.) This employee therefore is not entitled to any minimum wage back pay

### 3. Reconstruction of the Employees' Back Wages

John Bialt Jr. analyzed Vidtape's payroll records and testified about the back wage computations he performed for each employee. Because no records of hours worked, hourly wage or overtime compensation existed, Bialt reconstructed estimates of this information based on the gross pay, as stated in Vidtape's payroll records. (T. 490.)

Bialt divided the gross pay by the $4.00 per hour wage figure to calculate an estimated number of hours worked per fifteen day pay period. Then he recalculated the number of weeks worked [3] and the average number of hours worked per week. Once Bialt calculated the average number of hours worked per week, he calculated the minimum wage deficiency and overtime deficiency owed to each employee. (T. 494–503.) (*See* Plaintiff's Exh. 21a.)

On cross examination, Bialt admitted that in some circumstances, his average hours calculations were higher than the witnesses' testimony of working sixty hours per week. Bialt also stated that although time cards were available after June 10, 1997, he did not examine them in preparing his wage calculations. (T. 545, 547, 552.)

Because Plaintiff's Exhibit 21a, which was prepared prior to commencement of the trial, did not conform to the evidence adduced by the Secretary at trial, the Secretary submitted revised wage calculations prior to the close of trial but following the general admission of evidence. (*See* Plaintiff's Revised Exh. 21a.) This exhibit reflects the testimony of the Secretary's witnesses at trial. The revised calculations exclude additional wages for Sunday, since the testimony at trial revealed that Sunday hours were included in the bi-monthly paychecks. These calculations also reflect the stipulation that Vidtape began paying its employees minimum wage beginning with the June 16—June 30 pay period. The Secretary also submitted a revised summary chart. (*See* Revised Exh. 22a.) The court has not relied on any summary chart submitted by the Secretary prior to summations.

### 5. Child Labor

Wilber Amaya testified that he was fourteen years old when Vidtape hired him to pack videos and move boxes using a "hand truck." (T. 77, 809–810.) At his interview, he presented his INS work permit to Mohinder and Hardeep Anand, which indicated that Amaya was born on September 2, 1982. (T. 88–89, 76, 101–102, Plaintiff's Exh. 23.) Amaya worked ten hour days, six days a week, during the months when school was in session. (T. 79–80, 90, Plaintiff's Exh. 4.) Vidtape terminated Amaya after the Department of Labor began its investigation. (T. 87.) The court credits this testimony.

### G. Testimony of Defense Witnesses

### 1. Hardeep Anand

Hardeep Anand, the aunt of Mohinder and Satinder, testified that she worked as Vidtape's bookkeeper and secretary. She calculated the payroll every two weeks. (T. 646–647.) She stated that she used the minimum wage figures of $4.25, $4.75 and $5.15 to calculate the payroll. (T. 648–649.) She also testified that she calculated overtime wages for the employees. (T.

award, although he is entitled to a back pay overtime award. (*See* Exh. A annexed hereto, at 2.)

3. Bialt used the following formula: (Number of Vidtape pay periods the employee worked) ÷ (24 Vidtape pay periods per year) × (52 weeks per year) = Estimated number of weeks Vidtape employee worked.

649.) The court does not credit this testimony.

On cross-examination, Hardeep was not able to calculate the gross wage that she had written in the payroll records. She stated that she needed the time cards to perform this function. (T. 666–667.)

### 2. Delia Alvarado

Delia Alvarado who is presently employed by Inventive, testified that when she was hired in June, 1995 she earned $4.25 per hour. (T. 681, 682.) She stated her hours were Monday—Friday, 8:30 a.m. to 7:00 p.m. (T. 683.) She also testified that when she received her pay check, she reviewed the amount to be sure she was paid the proper wage and overtime. (T. 684.) The court does not credit this testimony.

### 3. Pridam Singh

Pridam Singh, a current Inventive employee, testified that he started working for Vidtape in 1997. (T. 696, 703.) He stated that he earned $4.75 per hour. When he began work, his hours were 8:30 a.m. to 7:00 p.m. Monday through Friday, but a few months later his hours were reduced to 8:30 a.m. to 5:00 p.m. (T. 697.) The court does not credit this testimony.

### 4. Sunder Shahani

Sunder Shahani, a current Inventive employee, testified that he earned $5.75 per hour when he was hired June 2, 1997 to work at Vidtape. He stated his hours were 8:30 a.m. to 5:00 p.m. Monday through Friday and that he received overtime pay for any additional hours worked. (T. 705.) Shahani also testified that his paychecks contained details as to deductions taken, including his first paycheck of June 18, 1997. The court does not credit this testimony. When shown this check on cross examination, he admitted that no such deductions were shown.

### 5. Arjan Singh Anand

Arjan testified that he was not employed by Vidtape and that he never hired, fired, set wages, set hours, or set policies for employees. (T. 714, 717.) He was present at the factory between 10:00 am and 2:00 pm during the week, but stated he was not involved in business discussions. (T. 718.) The court credits this testimony.

### 6. Satinder Singh Anand

Satinder testified that he worked on commission for Vidtape as a salesman. (T. 722, 724.) He stated he never hired or fired any employees, and rarely gave instructions to employees regarding production. (T. 725–726.) The court does not credit this testimony.

### 7. Mohinder Singh Anand

Mohinder testified as to the history of Vidtape since its incorporation in 1988. (T. 764–769.) He sold the manufacturing aspect of his business so that he could concentrate on sales. (T. 783.)

Mohinder stated employees were always informed of their wage rates, they worked Monday to Friday, 8:30 a.m. to 7:00 p.m., and they received overtime pay. (T. 777, 811.) He testified that the policies he set were in compliance with the F.L.S.A. (T. 590, 609–610.) He also testified that he directed Hardeep Anand to dispose of the time cards. (T. 781.) The court does not credit this testimony.

He stated that Malkit Singh managed the warehouse until January 1997, when Dilbag Singh and Pridam Singh replaced him. (T. 772.) According to Mohinder, Malkit drove employees to and from the train station, and then instructed employees as to which department they should work. (T. 772–773.) During the day, he made sales calls, but returned to drive employees to the train station and lock the factory. (T. 773.) Angus Gayle super-

vised the production area. (T. 772.) The court does not credit this testimony.

To rebut the calculations prepared by the Secretary, Mohinder prepared his own calculations. (*See* Defendants' Exh. X, Y.) For the period of June 1, 1997 to June 15, 1997, he made his calculations based on the preserved employee time cards and on his assertions regarding the employees' wages and work schedule. (T. 849.) For the period of May 1, 1995 to June 1, 1997, when the time cards were destroyed, Mohinder reviewed the payroll records, employee pay checks, and used a calendar to calculate the proper seven day work week. Based on his assertions as to the employees' work schedule as ten hour days, five days a week, along with his assertion that the employees were paid the proper minimum wage and overtime, he calculated the amount of pay that each employee received per week. He stated that the gross amount reported in the ledger was the same amount as his calculations, and concluded that under his version of the calculations, the employees were paid properly, and no back wages were owed. (T. 856–867.) The court does not credit Defendants' Exh. X or Y or the corresponding testimony of Mohinder.

On cross examination, rounding of calculations and mathematical errors in calculations in the chart were highlighted, indicating that Mohinder's calculation of the total pay did not match the gross wages that the employees received. (T. 897–898, 899.)

## CONCLUSIONS OF LAW

### A. Introduction

At the outset, the court in assessing the credibility of the witnesses, finds the testimony of plaintiff's employee witnesses were credible. These employees testified in English, Spanish, Urdu and Punjabi. The testimony spanned over the entire period of the Secretary's investigation, and many of the witnesses had never met, and

were unable to communicate with each other. Nonetheless, all stated the same information as to wages and hours. The court does not find the testimony of the defense witnesses to be credible.

### B. Employer

■■■ Defendants Mohinder and Satinder, but not Arjan, were employers under the Act. "Employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d); *see also Herman v. RSR Sec. Svcs. Ltd.*, 172 F.3d 132, 139 (2d Cir.1999) (noting that "employer" should be interpreted expansively.) Factors examined under the Second Circuit's economic reality test in determining whether an individual is an employer include: (1) whether the alleged employer had the power to hire and fire employees; (2) whether he or she supervised and controlled employee work schedules or conditions of employment; (3) whether he or she determined the rate and method of payment; and (4) whether he or she maintained employment records. *See RSR Sec. Svcs.*, 172 F.3d at 139. Since this is a "totality of the circumstances test," any relevant evidence can be examined, and not all factors are required to be present. *See id.*

### 1. Mohinder Singh Anand

■■■ Mohinder was the primary employer at Vidtape. He was the president and sole shareholder of Vidtape (T. 764, 651), he had the power to hire, fire and supervise the employees, he set the work schedule of 8:30 a.m. to 7 p.m. (T. 777, 725), and he determined the rate of pay for the employees. (T. 45.) He delegated the authority to his bookkeeper to calculate the wages, but he knew how to calculate them himself (T. 649). He also directed

his bookkeeper to dispose of the employment records. (T. 781.)

### 2. Satinder Singh Anand

■ Satinder, Mohinder's brother, was also an employer under the Act. Employee witnesses for the Secretary stated that Satinder hired them (T. 208, 318, 774, Plaintiff's Exh. 13, Kumar dep. at 14), they reported to him when Mohinder was not available, and he sometimes directed them to work on the weekend. (T. 62, 315.) Satinder had authority to sign checks for Vidtape, and did so on numerous occasions. (T. 763, Defendants' Exh. A.) He also prioritized work for employees and instructed employees as to aspects of their job. (T. 606, 348–349, 726, Kumar dep. at 14, 27–28.) Further, after Inventive purchased the manufacturing portion of Vidtape, Satinder became the president and employer for those who previously worked at Vidtape.

### 3. Arjan Singh Anand

■ Arjan, the father, does not meet the definition of employer under the F.L.S.A. and the economic reality test. He was never an owner, shareholder, or officer of Vidtape. (T. 712–13.) He never received a paycheck from Vidtape, and he stated he never gave orders, hired, fired, or set policies for the employees. (T. 713.) The court credits this testimony. Employees did see him at the factory during mid morning and early afternoon in the office, and most thought he was a "boss" when asked, (T. 270, 149, 288, 309, 333, 398, 477), but this testimony is insufficient to support a definition of employer under the economic realities test. Although he occasionally gave the employees orders or directions and did attend some employee meetings, (T. 333, 62), he did not hold an integral

role in Vidtape's operations, or in setting work policies, schedules or conditions of employment.[4]

### C. Enterprise

■ Vidtape and Inventive are an "enterprise" under the Act. All employees of the enterprise are therefore covered by the Act, regardless of whether or not they work in the division or corporation that has committed the violations. The Act defines enterprise as "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units." 29 U.S.C. § 203(s)(1)(A); *see also Brennan v. Arnheim & Neely, Inc.*, 410 U.S. 512, 517, 93 S.Ct. 1138, 1141, 35 L.Ed.2d 463 (1973) (stating the three elements a court should examine in determining whether an enterprise exists are related activity, uniform operations or common control, and common business purpose).

### 1. Related Activity

Vidtape and Inventive were a unified operation. After the sale of Vidtape's assets to Inventive, the two remained integrally related to each other and their business activities were intertwined. Vidtape's sole provider of videotapes was Inventive. (*See* Requirement Contract, Defendants' Exh. 613.) Vidtape concentrated solely on sales of Inventive's product. (T. 719.) Ninety percent of Inventive's sales were to Vidtape. (T. 613.) The two corporations share the same office and warehouse space. (T. 734.) Additionally, employees who worked for Vidtape testified that

---

4. With regard to the injunction of future violations against Inventive, Arjan is an employer. He is Inventive's general manager (T. 716), and he is also the fiduciary of the trust that holds 100% of Inventive's stock. (T. 713.)

when they commenced employment with Inventive, there was no change in their employment situation other than a different corporate name on their employment checks. (T. 367–368, 397.)

The sale of Vidtape's assets was not an arms length transaction. The purchase price was exactly equal to the outstanding loans on the assets of the corporation. (T. 728.) Typical warranties of fitness and merchantability were not given for this transaction. (T. 752.) Mohinder and Vidtape personally guaranteed the loan transaction. (T. 756, Defendants' Exh. P.) Further, the sale of Vidtape's assets and the corporate restructuring raise issues as to a legitimate business purpose, especially since the manufacturing operations under the Inventive corporate name began one day before the Secretary commenced this action. (T. 761.)

### 2. Common Control

Although the shareholders, officers and directors of the two corporations are not the same people, the common control element remains. The enterprise is a family business. Satinder was an employer at Vidtape and is an employer at Inventive. Mohinder and Vidtape guaranteed Inventive's corporate loan for the manufacturing assets. Additionally, Mohinder's wife and children are beneficiaries of the Nihang Nivas trust which owns 100% of Inventive's stock. For these reasons, Mohinder and Satinder's common control of the enterprise is apparent.

### 3. Engaged in Commerce

Defendants do not dispute that Vidtape and Inventive were engaged in commerce during the period of the Secretary's investigation. An enterprise is "engaged in commerce or in the production of goods in commerce" if employees are engaged in the production of goods for commerce and the enterprise has an "annual gross volume of sales ... not less than $500,000."

29 U.S.C. § 203(s)(1)(A). Defendants admitted in their amended answer that the enterprise (Vidtape and Inventive) had over $500,000 in annual sales at all relevant times encompassed by the amended complaint. (*See* Amended Answer at ¶ 9, *see also* Amended Complaint at XI.) The Secretary at trial adequately proved that the enterprise engaged in commerce.

### D. Record–Keeping Violations

■ Defendants violated the Act's record-keeping provisions. Under § 211(c), "every employer subject to ... this Act ... shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time." 29 U.S.C. § 211(c). The court has reviewed the defendants' payroll records (the only records in existence) for the period of July 3, 1995 to September 30, 1997. (*See* Plaintiff's Exh. 2–4.) The records state the employee's name, address, the fifteen day period for which the employee was paid, the date paid, the check number, the gross wage, deductions for social security, disability, federal tax, New York tax, and the employee's net pay. These records do not, however, indicate the sex and occupation of the employee (*see* 29 C.F.R. 516.2(a)(4)), the time of day and day of week in which the work week begins (*see* 29 C.F.R. 516.2(a)(5)), the regular hourly rate of pay for any work week (*see* 29 C.F.R. 516.2(a)(6)), the hours worked each workday and total hours worked each work week (*see* 29 C.F.R. 516.2(a)(7)), the total daily or weekly straight-time earnings or wages due (*see* 29 C.F.R. 516.2(a)(8)), or the total premium pay for overtime hours (*see* 29 C.F.R. 516.2(a)(9)).

■ Additionally, employees testified that they never received a pay stub or a

calculation of their wages or hourly rates when they received their pay checks. Vidtape did not establish a 7 day, 168 hour established "work week". *See* 29 C.F.R. 516.2. Payroll records indicate that instead of establishing a work week, the employees were paid twice a month, on approximately a fifteen day pay period.

■ For the period of May 1, 1995 to June 1, 1997, defendants also violated the provision requiring the preservation of time cards. *See* 29 C.F.R. 516.6(a)(1). Trial testimony established that Mohinder directed bookkeeper Hardeep Anand to dispose of the employees' time cards after she issued the employees' checks. (T. 781, 574, 653.)

After June 1998, defendants used the computerized Paychex payroll system to maintain their records. (*See* Plaintiff's Exh. 6.) These records do not show the number of hours the employee worked in a week and they do not define the work week, in violation of 29 C.F.R. 516.2.

Additionally, some employees testified that they were paid cash. (T. 46, 382, 474, 433–434.) No record of these payments has been preserved. These practices also violate § 211 of the Act.

## E. Evidence Standard

When an employer fails to keep records in conformity with his statutory duty, the Supreme Court has set forth a burden shifting analysis for calculating the amount of uncompensated work.

> An employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The matter then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946); *see also Reich v. Southern New England Telecom. Corp.*, 121 F.3d 58, 66–68 (2d Cir.1997) (stating the Secretary's burden is to produce "sufficient evidence to establish that the employees have in fact performed work for which they were improperly compensated and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference"). Testimony from a group of employee witnesses about the hours worked and pay received is sufficient representation to calculate the amount of wages owed to the enterprise's entire workforce. *See id.* (stating "the Secretary may present the testimony of a representative sample of employees as part of his proof of the prima facie case under the Act"). Since the defendants destroyed their employees' time cards and have no other records of the hours worked or wages paid to their employees, the burden shifting analysis set forth in *Mt. Clemens Pottery Co.* is applicable.

### 1. The Secretary has met her burden

■ In this case, twenty-one witnesses testified for the Secretary as to the wages they earned and the hours they worked at Vidtape. This is sufficient to establish the working conditions for the entire sixty-seven employees for whom the Secretary has claimed wages. These witnesses stated that they worked 8:30 a.m. to 7 p.m., Mondays through Saturdays, and approximately two Sundays a month. Most stated that they received $4.00 per hour in wages (or $3.50 per hour after taxes were taken

out). They did not receive a premium wage for overtime hours.

### 2. Defendants have failed to produce precise evidence to negate plaintiff's inference

Defendants' evidence is not sufficient to negate the inferences drawn by the employee witnesses who testified for the Secretary. Defendants' witnesses and Mohinder's calculations did not establish the precise amount of hours worked before June 10, 1997. The court does not find the testimony of the defense witnesses (who stated they worked 8:30 a.m. to 7:00 p.m. Monday to Friday and received the proper statutory wages) to be credible in light of the overwhelming evidence presented by the Secretary. One defense witness was the aunt of Mohinder and Satinder, and others were current employees of Inventive. (T. 660, 681, 695, 704.)

Defendants' Exhibit Y was also insufficient evidence of the precise amount of hours worked. These calculations, which were derived in a manner similar to Bialt's calculations, did not show the "precise amount of work performed." *Mt. Clemens Pottery Co.*, 328 U.S. at 687–88, 66 S.Ct. 1187. They were also replete with mathematical errors and rounding in order to make it appear that the employees' gross wages correspond with the defense's testimony as to work schedule and wages. For these reasons, these calculations are insufficient to overcome the overwhelming evidence presented by the plaintiff.

 Further, the waiver that Vidtape required its employees to sign before their resignation (*see* Defendants' Exh. G) is an insufficient defense to this action. The employees signed the waiver at the direction of Vidtape employers, and some employees testified that it was not trans-

lated into their native language. *See Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 35 (2d Cir.2002) (finding a waiver of all back wage claims that the plaintiff signed was an insufficient defense when the plaintiff was pressured to sign it, he did not understand the terms of the agreement, and the waiver was vague).

### F. Minimum Wage Violations

 Under § 206, the rate of pay per hour must be at least $4.25 (ending September 30, 1996), $4.75 (ending August 31, 1997), and $5.15 (currently). Minimum wage should be calculated on a work week basis, defined as a 7–day, 168 hour period. *See* 29 U.S.C. § 206.

The Secretary's witnesses testified that their gross wages before June 10, 1997 [5] were $4.00 per hour. Since no accurate records or other evidence were produced by defendants to negate the credible testimony of these nineteen witnesses, under *Mt. Clemens Pottery Co.*, the court draws the reasonable inference that the defendants did violate the minimum wage provisions of the Act.

### G. Overtime Violations

 Under § 207, no employees engaged in commerce shall work longer than forty hours per week unless the employee "receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half the regular rate at which he is employed." 29 U.S.C. § 207; *see also* 29 C.F.R. 778.109. Plaintiff's witnesses consistently testified that they did not receive overtime pay for the extra hours they worked. Since their average work week was between sixty to seventy hours, overtime compensation is owed to them.

---

**5.** The parties stipulated that "no claims" would be pursued after June 16, 1997, the last pay period before the Department of Labor's Investigation. (T. 836, 843–845.)

### H. Child Labor Violation

 In employing Wilbur Amaya, defendants violated the Act's child labor provision. Section 212(c) of the Act provides that "no employer shall employ any oppressive child labor in commerce or in the production of goods for commerce or in any enterprise engaged in commerce or in the production of goods for commerce." "Oppressive child labor" is defined as a "condition of employment under which ... any employee under the age of sixteen years is employed by an employer ... in any occupation." 29 U.S.C. § 203(*l*). Children between the age of 14 and 16 cannot be employed for more than three hours a day, 18 hours per week when school is in session, and 8 hours a day, 40 hours a week when school is not in session. Children may only work between 7 a.m. and 7 p.m. during school, and until 9p.m. in the summer. *See* 29 C.F.R. 570.35(a). The regulations also state that minors are not permitted to work in occupations that involve manufacturing of goods. *See* 29 C.F.R. 570.33(a)–570.33(e).

Wilber Amaya testified that he was hired by Mohinder. At his interview, Amaya presented Mohinder with his work card, which stated his date of birth was 1982. (*See* Plaintiff's Exh. 23.) Amaya worked at Vidtape in 1997 for approximately one year. He was fourteen years old when he began working. (T. 78.) He worked six days a week between the hours of 8:30 a.m. and 7:00 p.m. (T. 79.) He packed videos, used a lift, a hand cart, and machinery such as the video cassette machine. (T. 78, 88.) Vidtape terminated Amaya when the Department of Labor's investigation began. (T. 87.) Although Mohinder testified and defendants asserted as an affirmative defense that the minor child was hired at the request of a relative and that defendants were not aware they violated child labor law (T. 808, Answer ¶ 16), intent or wilfulness is not an element of this offense. *See* 29 U.S.C. § 212, 29 C.F.R. 570.

### I. Hot Goods

 The defendants violated the "hot goods" provision by manufacturing products in violation of the Act. The "hot goods" provision in § 215(a)(1) provides that it is unlawful for any person to "transport ... ship ... deliver or sell in commerce, or to ship, deliver, or sell with knowledge that shipment or delivery or sale thereof in commerce is intended, any goods in the production of which any employee was employed" in violation of minimum wage, overtime or child labor restrictions. 29 U.S.C. § 215(a)(1). The remedy for violation of this provision is an injunction (*see* § 217). Vidtape violated the "hot goods" provision by manufacturing videotapes in violation of the Act and then shipping them in interstate commerce. An injunction is warranted.

### J. Willful

 The court finds that defendants acted willfully. The Supreme Court has defined employment practices as willful when "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988); *see also Reich v. Waldbaum, Inc.*, 52 F.3d 35, 39 (2d Cir. 1995) (stating "if an employer acts unreasonably but not recklessly ... then its action should not be considered willful") (citations omitted). Mohinder and Satinder admitted that they had knowledge of the minimum wage and overtime laws. (T. 776, 855.) More than one witness indicated that before the Department of Labor interviewed employees, Mohinder had a meeting and told his employees to lie about their wages and hours worked. (T.

359, 406.) Further, a poster in the break room notified the employees of their rights under the Act. (T. 649.) For these reasons, a three year period for compensation of back wages beginning on May 1, 1995 is applicable. *See* 29 U.S.C. § 255(a).

## K. Damages[6]

The Secretary seeks compensation for sixty-seven employees. The Secretary seeks the following amount of damages: $50,649.25 in minimum wage violations for the period of May 1, 1995—June 10, 1997 and $70,716.30 in unpaid overtime wages for the period of May 1, 1995—October 5, 1997. (*See* Plaintiff's Summary Chart submitted after trial.) The Secretary also seeks liquidated damages in the amount of $121,365.55, for a total award of $242,731.10.

The Act's "Penalties" provision provides that employers who violate the minimum wage or overtime provisions shall be liable to the employees for unpaid wages, unpaid overtime, "and in an additional equal amount as liquidated damages." 29 U.S.C. § 206(b). Unless the employer shows "to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [Act]," liquidated damages should be awarded. 29 U.S.C. § 260.

The defendants destroyed all documentation related to hours worked or wages paid to their employees, such as time cards and pay stubs. In the absence of these records, the court finds the method used by the Secretary in calculating back wages owed to the employees to be reasonable.

For the period of May 1, 1995 to June 10, 1997, the court finds that Vidtape paid its employees $4.00 per hour for all hours worked, and did not pay overtime. The employees worked approximately sixty hours per week. This is the default standard that the court will use in calculating damages. Aside from cash payments to Muhammed Kashif, all calculations are based on the gross pay as stated in the defendants' payroll records. Further, as stipulated by the parties, the court finds that after the Department of Labor initiated its investigation on June 10, 1997, Vidtape reduced its work schedule to 8:30 a.m. to 5:00 p.m. Monday to Friday and increased its wages to the statutory minimum. (T. 836, 845.)

For these reasons, unless specifically discussed below, or due to a mathematical error by the Secretary, as noted by the court, the court awards back wages in the amount the Secretary has requested, and as set forth in Exhibit A.[7] Vidtape, Mohinder, and Satinder intentionally set these policies in deliberate violation of the Act. For this reason, liquidated damages will be awarded in an amount equal to the back wages that are owed.

### 1. Overtime claims after June 16, 1997

The Secretary has claimed overtime wages for various employees for the period of June 18, 1997 until October 5, 1997. The parties stipulated at trial that "no claims" would be pursued after June 16, 1997. (T. 836, 845.) Additionally, the Secretary's investigator, John Bialt, testified that in calculating this overtime, he did not examine the time cards, even though they

---

**6.** All back wage claims against Inventive were dismissed at the end of the Secretary's case. (T. 642.)

**7.** Exhibit A annexed hereto is based solely on Plaintiff's Revised Exh. 21a, and not on Plaintiff's Exh. Revised Exh. 22a, or Plaintiff's

summary chart submitted prior to summation, as the numbers for certain employees in Revised Exh. 22a and the summary chart do not correspond with those in Revised Exh. 21a. *See, e.g.* claims for Sarabjit Kaur, Hardeep Anand.

had been preserved. (*See* Defendants' Exh. D.) The Secretary continues to base overtime claims after June 16, 1997 on Bialt's mathematical formula. For these reasons, plaintiff's claim for overtime wages after June 16, 1997 are denied.

### 2. Back wages for defense witnesses

■ The Secretary has claimed back wages for Hardeep Anand, Delia Alvarado, Pridam Singh and Sunder Shahani. These employees testified for the defense that they were paid the proper minimum and overtime wages. Indeed, in the Secretary's revised calculations, the claim for Hardeep Anand was calculated at the minimum wage that she testified to. The Secretary argues that these witnesses were untruthful, that they actually worked the same schedule as the other employees, and that they earned only $4.00 per hour.

The court finds itself in a quandary. Witnesses who testified untruthfully should not profit from their perjury. At the same time, if defendants are not directed to pay this claim, they will benefit from encouraging their employees to speak untruthfully. For these reasons, the court directs that all back wages owed to Hardeep Anand, Delia Alvarado, Pridam Singh and Sunder Shahani in the amount of $5389.75 be deposited with the Clerk of this Court who shall forthwith deposit such money with the Treasurer of the United States. *See* 28 U.S.C. § 2041.

### 3. Malkit Singh

■ The defendants specifically object to the minimum wage claim of $9890.40 and overtime claim of $4409.17 for Malkit Singh. They argue that he received a monthly salary of $719 and that he earned additional wages on sales calls and commissions. Section 203 provides an exemption to the minimum wage and overtime requirements for employees "employed in a bona fide executive, administrative, or professional capacity . . . or in the capacity of outside salesman." 29 U.S.C. § 203(a)(1).

Plaintiff's witnesses testified that Malkit supervised them during the day and that they saw him in the factory during the day. (T. 321–322, 402.) Mohinder testified that Malkit was present in the factory only when he drove employees to and from the train station, and when returned at night to lock the factory. During the rest of the day, Mohinder contended that Malkit worked as an outside salesman. The court does not credit Mohinder's testimony.

The defense's testimony of Malkit's duties did not adequately establish that he was an exempt employee under the regulations. There was insufficient evidence to establish that Malkit's primary duties consisted of management of the enterprise, that he directed the work of two or more employees, that he had the power to hire or fire employees, that he customarily and regularly exercised discretionary powers, and that at least twenty per cent of his time was allocated to supervisory duties. *See* 29 C.F.R. 541.1 (requiring all elements to be met for the employee to be exempt). Further, Mohinder's testimony regarding Malkit's duties did not establish the requirements of an outside salesman, as no information was provided regarding whether Malkit obtained orders or contracts, or for what percentage of time Malkit was engaged in sales. *See* 29 C.F.R. 541.5. Based on the lack of evidence at trial, defendants have not sustained their burden of proving Malkit's status as an exempt worker, either as an "executive" or as an "outside salesman." *See Corning Glass Works v. Brennan,* 417 U.S. 188, 196–97, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974); *see also Martin v. Malcolm Pirnie, Inc.,* 949 F.2d 611, 614 (2d Cir.1991) (stating the employer "bears the

burden of proving that its employees fall within an exempted category of the Act").

Defendants have failed to support their contention that the Secretary was required to present a representative supervisory witness to substantiate the claims made for Malkit is without merit. No law has been cited by defendants and the court's research has failed to uncover any support for this argument. The court finds it sufficient that various witnesses for the Secretary testified that they saw Malkit working during the day at the factory. Defendants have failed to establish that Malkit is an exempt employee. *See* 29 C.F.R. 541.1.

For these reasons, the court awards the minimum wage claim of $9890.40, and the overtime wage claim of $4409.17 for Malkit Singh.

### 4. Unexplained Wage Claims in Plaintiff's Exhibit 21a

The Secretary claims $1693.65 for Vijay Kumar. While $278.07 was calculated in a manner different from the typical formula used for the other employees, the transcript of the witness admitted into evidence shows that this employee never received his final pay check, because he did not give Vidtape a month's notice before resigning. (Plaintiff's Post Trial Submission at ¶ 56; Plaintiff's Exh. 13, Kumar dep. at 35.) The defendants did not question Kumar about this statement. For this reason, the claim will be permitted.[8]

Further, the claim for Hardeep Anand in plaintiff's Revised Exh. 22a does not correlate to her claim in Revised Exhibit 21a. Since Exhibit 22a is a summary of the calculations performed, the court only relies on the calculations performed in Revised Exhibit 21a, which claims $1691.73 plus an additional unsubstantiated $394.61. For these reasons, the court awards $1691.73.

### L. Prospective Injunction Against Future Violations

■ Pursuant to § 217, the Secretary is entitled to the equitable relief of an injunction restraining Vidtape, Inventive, Mohinder, Satinder and Arjan from future violations of the Act based upon the conclusion that they willfully violated the Act's minimum wage, overtime, record keeping, child labor and "hot goods" requirements. *See* Plaintiff's proposed conclusions of law ¶ 23.

An injunction against the enterprise is warranted in this case. Since the court finds that Inventive and Vidtape are an enterprise, even though back wage claims were dismissed against Inventive, an injunction is warranted against both corporations. An injunction is also warranted against Mohinder and Satinder, the two individual employers who set work policies in violation of the Act and against Arjan, who is the general manager of Inventive.

### M. Judgment for Back Wages and Liquidated Damages

■ Defendants Mohinder Singh Anand, Satinder Singh Anand, Vidtape, and Inventive are jointly and severally liable for the back wages and liquidated damages totaling $239,707.16. *See Falk v. Brennan,* 414 U.S. 190, 94 S.Ct. 427, 38 L.Ed.2d 406 (1973), 29 C.F.R. 791.

The provisions of this order relative to back wage payments shall be deemed satisfied when defendants deliver to the Bank of America, U.S. Department of Labor, ESA, Wage and Hour Division, P.O. Box 845229 Dallas, TX 75284–5229 certified checks or bank checks or money orders made payable to each individual employee listed in Exhibit A *and* in the alternative "or Wage–Hour, Labor" (e.g. "Amar Singh Kaler or Wage–Hour, Labor") in the net

**8.** This claim was included as a Minimum Wage Claim in Exhibit A.

amount due each said employee after making legal deductions from the gross amounts of back wages only and not from liquidated damages or pre-judgment interest listed opposite their names. Said payments shall be delivered no later thirty (30) days from the entry of this order.

Defendants shall make available to plaintiff the social security number and last known address of each employee or former employee listed in Exhibit A. The Secretary shall distribute the proceeds of such checks to the employees involved, or to their estates, if that is necessary.

Neither defendants nor any one on their behalf shall directly or indirectly solicit or accept the return or refusal of any sums paid as back wages and liquidated damages under this Judgment. Any sums which cannot be distributed to the employees named herein, or to their personal representatives because of inability to locate the proper persons or because of such persons' refusal to accept such sums, shall be deposited with the Clerk of this Court who shall forthwith deposit such money with the Treasurer of the United States pursuant to 28 U.S.C. §§ 2041 and 2042.

### N. Costs

The Secretary, in paragraph XVIII(4) of her amended complaint, seeks an order awarding plaintiff the costs of this action. Plaintiff is hereby additionally awarded costs.

### JUDGMENT

### A. INJUNCTION

I. ORDERED, ADJUDGED AND DECREED, that defendants Vidtape, Inc., Inventive Technology Systems, Inc, Mohinder Singh Anand, Satinder Singh Anand and Arjan Singh Anand, their officers, agents, servants, employees, and those persons in active concert or participation with them who receive actual notice of this Order by personal service, or otherwise, be, and they hereby are, permanently enjoined and restrained from violating the provisions of §§ 6(a)(1), 7(a)(1), 11(c), 12(c), 15(a)(1), 15(a)(2), 15(a)(4), and 15(a)(5) of the Fair Labor Standards Act of 1938, as amended, (52 Stat. 1060, 29 U.S.C. §§ 201–219, et seq.), hereinafter called the Act, in the following manners:

1. Defendants Vidtape, Inc., Inventive Technology Systems, Inc, Mohinder Singh Anand, Satinder Singh Anand and Arjan Singh Anand shall not, contrary to § 6 of the Act, pay to any of their employees who in any work week are engaged in commerce or in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce, within the meaning of the Act, wages at rates less than those which are now, or which in the future may become, applicable under § 6 of the Act.

2. Defendants Vidtape, Inc., Inventive Technology Systems, Inc, Mohinder Singh Anand, Satinder Singh Anand and Arjan Singh Anand shall not, contrary to § 7 of the Act, employ any of their employees in any work week who are engaged in commerce or in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce, within the meaning of the Act, for work weeks longer than the hours now, or which in the future become, applicable under §§ 7 and 15(a)(2) of the Act, unless the said employees receive compensation for their employment in excess of the prescribed hours at rates not less than one and one-half times the employees' regular rates.

3. Defendants Vidtape, Inc., Inventive Technology Systems, Inc, Mohinder Singh Anand, Satinder Singh Anand and Arjan Singh Anand shall not, contrary to §§ 12(c) and 15(a)(4) of the Act, employ minors under the age of eighteen years in commerce or in the production of goods for

**300**

commerce, or in an enterprise engaged in commerce or in the production of goods for commerce, within the meaning of the Act, on jobs or during hours which constitute oppressive child labor as defined in § 3(*l*) of the Act and the Regulations issued pursuant thereto and found at 29 C.F.R. Part 570, Subpart C, § 570.35.

4. Defendants Vidtape, Inc., Inventive Technology Systems, Inc, Mohinder Singh Anand, Satinder Singh Anand and Arjan Singh Anand shall not fail to make, keep, and preserve adequate records of their employees and of the wages, hours, and other conditions and practices of employment maintained by them, as prescribed by the Regulations issued pursuant to §§ 11(c) and 12 of the Act and found at 29 C.F.R. Part 516 and 29 C.F.R. § 570.36.

*B. BACK PAY AND LIQUIDATED DAMAGES*

II. ORDERED, ADJUDGED AND DECREED that Defendants Vidtape, Inc., Inventive Technology Systems, Inc., Mohinder Singh Anand and Satinder Singh Anand shall not withhold the back wages due the employees and former employees listed on Exhibit A. Defendants Vidtape, Inc., Inventive Technology Systems, Inc., Mohinder Singh Anand and Satinder Singh Anand shall pay to plaintiff's representatives $119,853.58 in unpaid minimum wage and overtime compensation, and $119,853.50 in liquidated damages, for a total amount of $239,707.58; and it is further

ORDERED that any monies due persons named in Exhibit A, annexed hereto and not so distributed by plaintiff within one (1) year, because of plaintiff's inability to locate the proper person or said persons' refusal to accept such money, shall be deposited with the Clerk of the Court who shall forthwith deposit such money with the Treasurer of the United States

pursuant to 28 U.S.C. § 2041; and it is further

ORDERED, that if payment is not tendered within such time, additional interest shall be due defendants' employees and former employees at the applicable adjusted prime rate, and it is further

*C. COSTS*

IV. ORDERED, ADJUDGED AND DECREED that the costs of this action shall be taxed by the Clerk against defendants Vidtape, Inc., Inventive Technology Systems, Inc., Mohinder Singh Anand and Satinder Singh Anand.

The clerk of the court is directed to enter judgment and mark this case as closed.

SO ORDERED.