Michael McGLONE, on behalf of himself individually and others similarly situated, Plaintiffs,

v.

CONTRACT CALLERS, INC., Michael Maguire, an individual, and William "Tim" Wertz, an individual, Defendants.

No. 11 Civ. 3004(AT).

United States District Court, S.D. New York.

Signed Aug. 25, 2014.

Penn Ueoka Dodson, Anderson Dodson, P.C., New York, NY, for Plaintiffs.

Ira Leonard Blank, Lawrence Wittels, The Enterprise Law Group LLC, St. Louis, MO, Lauren Katz Kluger, Reitler Kailas & Rosenblatt, L.L.C., New York, NY, for Defendants.

### MEMORANDUM AND ORDER

ANALISA TORRES, District Judge:

In this action, Plaintiffs, Michael McGlone, on behalf of himself individually and others similarly situated, allege that Defendants, Contract Callers, Inc. ("CCI"), Michael Maguire, and William "Tim" Wertz, violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.* Defendants move to decertify the conditionally certified collective action under 29 U.S.C. § 216(b). Plaintiffs move for partial summary judgment under Rule 56 of the Federal Rules of Civil Procedure and request final collective certification. Maguire also moves for summary judgment. For the reasons stated below, Defendants' motion to decertify the conditionally certified collective action is DENIED. Plaintiffs' request for final certification is GRANTED. Plaintiffs' motion for partial summary judgment is GRANTED. Maguire's motion for summary judgment is DENIED.

### BACKGROUND

CCI is a corporation headquartered in Augusta, Georgia, with twelve operating divisions throughout the United States. Def. 56.1 ¶ 1; Pl. 56.1 ¶ 1. Certain divisions of CCI provide utility disconnect and reconnect service under contracts with local utility companies. ECF No. 29 at 2. CCI's New York City division entered into a contract with the New York City Department of Environmental Protection ("DEP") to install water meters and associated devices that transmit the meter readings back to the DEP (thus avoiding the need for a meter reader to read them manually). *See* Peniche Decl. ¶ 2. Plaintiffs are plumbers who worked for CCI installing the automatic meter reading devices during its limited duration contract with the DEP. *See id.;* McGlone Dep. 17:2–24, Mar. 14, 2013.

Plaintiffs contend that they were required to sign in at 8:00 a.m. and sign out at 4:30 p.m. and record a half-hour break for lunch each day, for a total of 40 hours of work each week. Dodson Decl. Exs. B, C, Jan. 6, 2014. Plaintiffs were allegedly "shorted" on their hours by being required to work "off the clock" before and after their standard shifts and to record a half-hour meal break even though they were unable to take a bona fide half-hour break to eat. *See id.*

### DISCUSSION

#### I. *Collective Certification*

The FLSA authorizes a plaintiff to file suit on behalf of "other employees similarly situated." 29 U.S.C. § 216(b). Courts in this Circuit use a two-step method in assessing whether to certify a collective action. *Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir.2010). At the first stage, plaintiffs must "make a 'modest factual showing' that they and potential opt-in

plaintiffs 'together were victims of a common policy or plan that violated the law.' " *Id.* at 555 (citation omitted). Once a plaintiff meets this standard, the court may authorize the plaintiff to send out notices to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs with respect to the FLSA violation alleged. *Id.*

▮ "At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs. The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Myers,* 624 F.3d at 555 (citation omitted). But, "[i]f the record shows all putative class members are 'similarly situated,' the 'conditional' aspect is removed, the collective action is finally certified, and the matter proceeds to trial." *Morano v. Intercontinental Capital Grp., Inc.,* No. 10 Civ. 2192, 2012 WL 2952893, at *6 (S.D.N.Y. July 17, 2012). At this second stage, the "burden is on the named plaintiff to prove that the other employees are similarly situated." *Zivali v. AT & T Mobility, LLC,* 784 F.Supp.2d 456, 460 (S.D.N.Y.2011). Although "the standard is higher at this second stage, the 'similarly situated' requirement of 29 U.S.C. § 216(b) is considerably less stringent than the requirement of Fed.R.Civ.P. 23(b)(3) that common questions 'predominate.' " *Alonso v. Uncle Jack's Steakhouse, Inc.,* No. 08 Civ. 7813, 2011 WL 4389636, at *3 (S.D.N.Y. Sept. 21, 2011) (citation and internal quotation marks omitted). "All that is required is a persuasive showing that the original and opt-in plaintiffs were common victims of a FLSA violation pursuant to a systematically-applied company policy or practice such that there exist common

questions of law and fact that justify representational litigation." *Pefanis v. Westway Diner, Inc.,* No. 08 Civ. 2, 2010 WL 3564426, at *4 (S.D.N.Y. Sept. 7, 2010). "The Second Circuit has yet to prescribe a particular method for determining whether members of a class are similarly situated...." *Morano,* 2012 WL 2952893, at *5. However, district courts typically review several factors, including (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *Id.*; *see also Ayers v. SGS Control Servs., Inc.,* No. 03 Civ. 9077, 2007 WL 646326, at *5 (S.D.N.Y. Feb. 27, 2007).

A. Factual and Employment Settings of the Opt-in Plaintiffs

▮ Defendants argue that the opt-in Plaintiffs are not similarly situated regarding meal breaks or hours worked because there were wide variations in their meal break and hours worked practices. Defendants point to evidence that some opt-ins "never" took meal breaks, while others testified that they were not afforded a half-hour meal break "most of the time." Def. Cert. Mem. 9. Defendants also argue that "[v]ariations in schedules ... days worked, and actual hours worked per day mandate individualized determinations about whether each particular [p]lumber is entitled to overtime pay if he, in fact, worked uncompensated time off the clock and during meals." *Id.* at 11. These arguments are unavailing. Courts have found opt-in plaintiffs similarly situated "in large off-the-clock cases despite the individualized issues such cases present ... [e]ven where individualized testimony into damages is required." *Barry v. S.E.B. Serv. of New York, Inc.,* No. 11 Civ. 5089, 2013 WL 6150718, at *6 (E.D.N.Y. Nov. 22, 2013); *see also Alonso,* 2011 WL 4389636,

at *3 (rejecting argument that "decertification is appropriate because individualized proof would be required as to each [p]laintiff's claim for overtime wages"); *Ayers*, 2007 WL 646326, at *5 (rejecting argument that individual inquiries into hours worked required decertification of the collective action).

Indeed, "individual differences in number of hours worked ... will not warrant decertification as long as [p]laintiffs show they are subject to a 'single decision, policy, or plan.'" *Alonso*, 2011 WL 4389636, at *3 (citation omitted). Here, Plaintiffs have adduced evidence that they were common victims of a FLSA violation. Section 207 of the FLSA requires employers to pay each employee overtime compensation equal to at least "one and one-half times the regular rate at which [the employee] is employed," for all hours worked in excess of 40 per week. 29 U.S.C. § 207(a)(1). Bona fide meal breaks may be excluded from an employee's work time if the employee is "completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period." 29 C.F.R. § 785.19.

Plaintiffs contend that they were required to sign in at 8:00 a.m. and sign out at 4:30 p.m. and record a half-hour break for lunch each day, for a total of 40 hours of work each week. Dodson Decl. Exs. B, C. Plaintiffs' deposition testimony indicates they were "shorted" on their hours by being required to work "off the clock" before and after their standard shifts and that a half hour was deducted for meal breaks even though they were unable to take a bona fide half-hour break to eat. *See id.* Additionally, Plaintiffs all held the same job position, were geographically located in the same CCI facilities, and had the same supervisors. Accordingly, the first factor weighs in favor of finding that Plaintiffs are similarly situated.

### B. Defenses Available to Defendants

Defendants contend that they had no actual or constructive knowledge of the off-the-clock work performed and that some of the alleged unpaid off-the-clock work involved *de minimis* periods of time, which are not counted as hours worked for overtime purposes, among other potential defenses. *See* Def. Cert. Mem. 12–14. Defendants argue that the action must be decertified because individual determinations are necessary to resolve Defendants' defenses to Plaintiffs' claims. Plaintiffs argue that Defendants' defenses "are common to the class [and] their inability or lack thereof should be decided once rather than 20 times, lest there be inconsistent results." Pl. Cert. Mem. 11. The Court is not persuaded that the various defenses available to Defendants are so individualized as to each Plaintiff that decertification is required. To the extent that Defendants allege an actual or constructive knowledge defense, it is unlikely to vary between individual Plaintiffs. Plaintiffs shared the same supervisors, so to the extent that the supervisors knew that some of Plaintiffs worked off-the-clock before and after shifts and during lunch breaks, they likely knew that most or all of Plaintiffs did so as well. Defendants' *de minimis* defense will also likely succeed or fail across the entire collective. Plaintiffs correctly note that if Defendants assert that defense, there will probably be two stories told at trial: "Defendants will put on witnesses suggesting that the morning meetings lasted from 7:57am [sic] to 8:00am [sic] but Plaintiffs will put on evidence showing that they were required to attend the morning meetings that started at 7:30am [sic]." Pl. Cert. Mem. 11. Thus, Defendants' *de minimis* defense will likely succeed or fail collectively depending on which version of

the facts the jury believes. To the extent that Defendants' *de minimis* defense could apply with respect to particular Plaintiffs and particular shifts, the individual inquiries do not require decertification. The argument that the *de minimis* defense (or the defense that simply no off-the-clock work occurred) requires individualized inquires that warrant decertification is simply the inverse of the argument that individualized testimony as to damages requires decertification. *See Mendez v. Radec Corp.*, 232 F.R.D. 78, 92 (W.D.N.Y. 2005) ("to the extent that defendants may raise 'individual defenses' to plaintiffs' claims, those defenses would appear to go largely to the issue of damages"). Thus, because the Court has already found that individualized inquiries into damages do not warrant decertification, above, neither do the individualized defenses asserted by Defendants. *See id.*

### C. Fairness and Procedural Considerations

FLSA is a remedial statute; thus, federal courts should give it a liberal construction. *See Braunstein v. E. Photographic Labs.*, 600 F.2d 335, 336 (2d Cir.1979). The Supreme Court has held that a FLSA collective action allows plaintiffs to take "advantage of lower individual costs to vindicate rights by the pooling of resources," and allows the judicial system to benefit by "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [violation]." *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). Nineteen Plaintiffs have opted in to this action. Litigating overtime claims for each of these Plaintiffs individually would be burdensome on Plaintiffs, Defendants, and the courts. As a result, both fairness and procedural considerations weigh in favor of certifying the class. *See Gayle v. Harry's Nurses Registry, Inc.*, No. 07 Civ.

4672, 2012 WL 686860, at *6 (E.D.N.Y. Mar. 2, 2012) ("Certification is favored where a collective action would lower costs to the [p]laintiffs by pooling resources, efficiently resolving common issues of law and fact, and coherently managing the class in a manner that will not prejudice any party.").

Accordingly, Defendants' motion to decertify the conditionally certified collective action is DENIED and Plaintiffs' request for final certification is GRANTED.

### II. *Plaintiffs' Motion for Partial Summary Judgment*

#### A. Standard of Review

Summary judgment may be granted only if the court concludes that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir.2004). A dispute is genuine when there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those which may affect the outcome of a case. *Id.*

The moving party initially bears the burden of informing the court of the absence of a genuine dispute of material fact by citing to particulars in the record. Fed.R.Civ.P. 56(c); *Celotex*, 477 U.S. at 322–25, 106 S.Ct. 2548; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir.2002). The movant may satisfy his burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed.R.Civ.P. 56(c)(1)(B). If the non-moving party has the burden of proof on specific issues, the movant may also satisfy his own initial burden by demon-

strating that the adverse party cannot produce admissible evidence to support an issue of fact. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *PepsiCo Inc. v. Coca–Cola Co.,* 315 F.3d 101, 105 (2d Cir.2002). In deciding the motion, the court views the record in the light most favorable to the non-moving party. *Hunter v. Bryant,* 502 U.S. 224, 233, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); *O'Hara v. Weeks Marine, Inc.,* 294 F.3d 55, 61 (2d Cir.2002).

If the moving party meets his initial burden, the burden then shifts to the opposing party to establish a genuine issue of fact. *Beard v. Banks,* 548 U.S. 521, 529, 126 S.Ct. 2572, 165 L.Ed.2d 697 (2006); *Santos v. Murdock,* 243 F.3d 681, 683 (2d Cir.2001). The opposing party may not avoid summary judgment by relying solely on conclusory allegations or denials that are unsupported by factual data. Fed. R.Civ.P. 56(c); *Amaker v. Foley,* 274 F.3d 677, 680–81 (2d Cir.2001). Instead, the opposing party must set forth "specific facts showing there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (internal quotation marks omitted). A non-moving party demonstrates a "genuine issue for trial" by presenting evidence about a material fact, such that a reasonable jury could return a verdict in his favor. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

### B. Local Civil Rule 56.1

Local Civil Rule 56.1 governs factual statements on motions for summary judgment. It requires a party moving for summary judgment to submit "a separate, short and concise statement" setting forth material facts as to which there is no genuine issue to be tried. Local Civ. R. 56.1(a). A party opposing summary judgment must respond with a statement of facts as to which a triable issue remains. Local Rule 56.1(b). "Each numbered paragraph in the statement of material facts ... will be deemed to be admitted ... unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Local Civ. R. 56.1(c). Further, "[e]ach statement by the movant or opponent ... including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed.R.Civ.P. 56(c)." Local Civ. R. 56.1(d). Facts in an uncontroverted statement may be deemed admitted as a matter of law. *See Gubitosi v. Kapica,* 154 F.3d 30, 31 n. 1 (2d Cir.1998).

Plaintiffs ask the Court to grant summary judgment on two issues so "that the presentation of evidence [at] trial will be significantly streamlined and the math made easier for all." Pl. Partial Sum. Judg. Mem. 19. Defendants did not file papers opposing Plaintiffs' motion for partial summary judgment, nor did they submit responses to Plaintiffs' statement of undisputed material facts. Accordingly, those statements are deemed admitted. *See Gubitosi,* 154 F.3d at 31 n. 1.

### C. *Anderson v. Mt. Clemens Pottery* Burden Shifting Framework

Plaintiffs first ask the Court to find that "Defendants' time records are inaccurate as a matter of law, warranting application of [the] *Anderson v. Mt. Clemens Pottery* burden shifting framework and [the] 'just and reasonable inference' standard." Pl. Partial Sum. Judg. Mem. 1.

In a FLSA case, it is the employee's burden to prove that he performed work for which he was not properly compensated. *Jiao v. Shi Ya Chen,* No. 03 Civ. 165, 2007 WL 4944767, at *2 (S.D.N.Y. Mar. 30, 2007). However, under the statute it is the employer's responsibility to "make, keep, and preserve" records of employee wages and conditions of employ-

ment. 29 U.S.C. § 211(c); *see also* 29 C.F.R. § 516.2.[1] Where an employer keeps "inaccurate or inadequate records," "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), *superseded by statute on other grounds as stated in Sandifer v. U.S. Steel Corp.*, ⸺ U.S. ⸺, 134 S.Ct. 870, 875, 187 L.Ed.2d 729 (2014). In other words, if an employer keeps inaccurate or inadequate records, the plaintiff need only offer a reasonable estimate of his damages. *See Harold Levinson Associates, Inc. v. Chao*, 37 Fed.Appx. 19, 21 (2d Cir.2002). Once the employee has offered his estimate, the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. *Anderson*, 328 U.S. at 687–88, 66 S.Ct. 1187. "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Id.* at 688, 66 S.Ct. 1187.

█ Thus, the first step is for the Court to "determine whether [D]efendants have failed to keep accurate or adequate records." *Bueno v. Mattner*, 633 F.Supp. 1446, 1452–53 (W.D.Mich.1986), *aff'd*, 829 F.2d 1380 (6th Cir.1987). "In wages and hours cases in which payroll and time records are kept, the accuracy and adequacy of the records can be determined in a variety of ways," including documentary evidence and testimony of witnesses.

*Agudelo v. E & D LLC*, No. 12 Civ. 960, 2012 WL 6183677, at *2 n. 1 (S.D.N.Y. Dec. 11, 2012); *see also Jenkins v. Sara Lee Corp.*, No. 05 Civ. 74, 2008 WL 731265, at *5 (E.D.Tenn. Mar. 17, 2008) ("[D]eposition testimony of [p]laintiffs ... [shows that] Mr. McFall instructed the employees to only record their scheduled hours instead of the hours they actually worked. Thus, the records kept by Defendant Sara Lee, *i.e.* the time sheets, according to the plaintiff, are not accurate and, thus, the burden should shift to Sara Lee."); *Centeno v. I & C Earthmovers Corp.*, 970 F.Supp.2d 1280, 1287 (S.D.Fla.2013) ("The plaintiffs also attest that the defendants 'had instructed [them] to report a lesser schedule of 7 am to 3:30 pm and not the full schedule [they] actually worked.' ").

Here, Plaintiffs have demonstrated that Defendants kept inaccurate records. For the first couple of weeks on the project, Defendants' time log records show the plumbers signing in and signing out at disparate times. PL Partial Sum. Judg. 56.1 ¶ 7. Afterward, Defendants' records consistently show Plaintiffs as having worked from exactly 7:30 a.m. to 4:00 p.m. *Id.* ¶ 8. And, beginning approximately in May 2009, Defendants' records consistently show Plaintiffs as having worked from exactly 8:00 a.m. to 4:30 p.m. *Id.* ¶ 9. Angelo Solomine, the general manager in charge of the New York division, admitted that the CCI facility opened at 7:00 a.m. and that he saw plumbers arrive before 8:00 a.m., before 7:30 a.m., and even sometimes before 7:00 a.m. *Id.* ¶ 14. Solomine also stated that an incentive program was created where, if a plumber finished a certain number of jobs, he would be allowed to leave work early but log his time as if he had worked until 4:30 p.m. *Id.* ¶ 18.

---

1. Similar record-keeping requirements exist under New York law. *See* N.Y. Comp.Codes R. & Regs. tit. 12, § 142–2.6.

Solomine's testimony establishes that Defendants did not accurately record Plaintiffs' hours worked on both the front and back ends of their shifts. The incentive program distorted their actual hours worked on the back end of their shifts, as the time logs show that Plaintiffs stopped working at 4:30 p.m. even if they had left work earlier.[2] And, Solomine's testimony admitting that plumbers often arrived at the facility before 8:00 a.m., 7:30 a.m., and even 7:00 a.m., combined with the exact round numbers recorded as Plaintiffs' start times in the time logs, demonstrate that Plaintiffs' hours were not accurately recorded on the front end of their shifts either. Accordingly, this Court holds as a matter of law that Defendants' time records are inaccurate and that the *Anderson v. Mt. Clemens Pottery* just and reasonable inference standard will apply at trial.

### D. Defendants' Incentive Program

As discussed above, CCI created an incentive program where, if a plumber finished a certain number of jobs, he would be allowed to leave work early but log his time as if he had worked until 4:30 p.m. Pl. Partial Sum. Judg. 56.1 ¶ 18. Plaintiffs also seek summary judgment that "[t]he pay associated with Defendants' 'incentive program' amounted to a 'bonus' and cannot retrospectively be used to offset any pay otherwise owed to Plaintiffs pursuant to state and federal law." Pl. Partial Sum. Judg. Mem. 1.

"Section 207(h) is the only provision in the FLSA that addresses offsets." *Garcia v. Tyson Foods, Inc.,* 890 F.Supp.2d 1273, 1291 (D.Kan.2012). Plaintiffs argue that there are only three categories of payment which may be credited against overtime compensation mandated by the FLSA, citing 29 U.S.C. § 207(h)(2). However, the three exceptions listed in § 207(h)(2) are only carved out of the universe of compensation "excluded from the regular rate [of payment] pursuant to subsection (e)." 29 U.S.C. § 207(h)(1). "[E]xtra compensation which is paid as an incentive for the rapid performance of work," such as Defendants' incentive program, "requires ... inclusion in the regular rate." 29 C.F.R. 778.207. Therefore, "the statute does not specifically bar an offset" for payments made pursuant to an incentive program like Defendants'. *Garcia,* 890 F.Supp.2d at 1292.

In *Garcia,* the employer paid for what the court called "sunshine time"—"a form of compensation ... representing the difference between the amount of time scheduled for a shift and the amount of time it took to complete the work for the day." *Id.* at 1290. "For example, if the shift was scheduled to last 7 hours and 56 minutes yet the employees finished the work in 7 hours and 40 minutes, the employees were paid for the entire scheduled shift." *Id.* at 1290–91. The court confronted the precise legal issue before the Court now, "whether the sunshine pay ... is eligible for an offset; a situation not addressed by § 207(h)." *Id.* at 1292. After considering another district court case, *Alvarez v. IBP, Inc.,* No. 98 Civ. 5005, 2001 WL 34897841, at *24 (E.D.Wash. Sept. 14, 2001), *reversed on other grounds by,* 339 F.3d 894 (9th Cir.2003), which held

---

**2.** Although the Court notes that these inaccuracies advantaged Plaintiffs, the Court has found no cases that distinguish between beneficial and detrimental inaccuracies in time records when determining whether the *Anderson v. Mt. Clemens Pottery* burden shifting framework applies. Indeed, in two cases where the employers had incentive programs similar to Defendants', the courts utilized the framework when determining damages. *See Garcia v. Tyson Foods, Inc.,* 890 F.Supp.2d 1273, 1284 (D.Kan.2012); *Alvarez v. IBP, Inc.,* No. 98 Civ. 5005, 2001 WL 34897841, at *7 (E.D.Wash. Sept. 14, 2001), *reversed on other grounds by,* 339 F.3d 894 (9th Cir.2003).

that sunshine payments could not be used to offset overtime pay obligations, and Department of Labor regulations, the court found that the defendants' "sunshine payments [could] not be offset against [the] plaintiffs' damages." *Garcia,* 890 F.Supp.2d at 1294. The court was persuaded by 29 C.F.R. § 778.201(c), which provides: "Section [207(h) ] of the Act specifically states that the extra compensation provided by these three types of payments may be credited towards overtime compensation due under section [207(a) ] for work in excess of the applicable maximum hours standard. *No other types of remuneration for employment may be so credited.*" (emphasis added). For the same reasons articulated in *Garcia,* this Court finds that payments made pursuant to Defendants' incentive program may not be used to offset any pay otherwise owed to Plaintiffs pursuant to state [3] and federal law.

Accordingly, Plaintiffs' motion for partial summary judgment is GRANTED.

### III. *Maguire's Motion for Summary Judgment*

■ Defendants also seek summary judgment on Plaintiffs' FLSA claims against Maguire, arguing that Maguire was not Plaintiffs' "employer." Individual liability under the FLSA is premised upon "personal responsibility for making decisions about the conduct of the business that contributed to the violations of the Act." *Baystate Alt. Staffing, Inc. v. Herman,* 163 F.3d 668, 678 (1st Cir.1998). The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Second Circuit has adopted an "economic reality" test for determining whether an individual qualifies as an "employer" under the FLSA. *Irizarry v. Catsimatidis,* 722 F.3d 99, 111 (2d Cir.2013). Under the "economic reality" test, courts look to the totality of the circumstances and consider whether the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 139 (2d Cir.1999) (citation and internal quotation marks omitted). These factors do not "comprise a rigid rule for the identification of an FLSA employer," but rather "provide a nonexclusive and overlapping set of factors to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Irizarry,* 722 F.3d at 105 (citations and internal quotation marks omitted).

Maguire was employed by CCI as vice president of sales/business development. Def. 56.1 ¶ 8; Pl. 56.1 ¶ 8. Maguire was not

---

**3.** New York law requires employers to "pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in *the manner and methods* provided in and subject to the exemptions of sections 7 and 13[,] of 29 U.S.C. 201 *et seq.*" N.Y. Comp.Codes R. & Regs. tit. 12, § 142–2.2 (emphasis added). Accordingly, the same FLSA analysis regarding whether the incentive program pay may offset overtime compensation applies to Plaintiffs' NYLL claims. *See Lewis v. Alert Ambulette Serv. Corp.,* No. 11 Civ. 442, 2012 WL 170049, at *5 (E.D.N.Y.

Jan. 19, 2012) (citation omitted) ("New York State labor regulations substantially incorporate and adopt the FLSA's overtime regulations. As such, the same elements are required to prove plaintiffs' claim under New York labor law as under federal law."); *Khan v. IBI Armored Servs., Inc.,* 474 F.Supp.2d 448, 451 n. 1 (E.D.N.Y.2007) (citation omitted) ("New York's overtime law incorporates most of the FLSA's substantive provisions and exemptions, and a court's analysis under federal and state law will, in this and most cases, be the same.")

an owner of CCI. Def. 56.1110; Pl. 56.1 ¶ 10. Maguire described his primary duties as generating sales, new business development, identifying opportunities, and closing deals. Def. 56.1 ¶ 9; Pl. 56.1 ¶ 9. Solomine was the general manager in charge of the New York division; Plaintiffs reported to supervisors Charles Loguidici and James Olsen, as well as Solomine. Def. 56.1 ¶¶ 5, 6; Pl. 56.1 ¶¶ 5, 6. Solomine, Loguidici, and Olsen gave Plaintiffs their work assignments. Def. 56.1 ¶ 7; Pl. 56.1 ¶ 7. Maguire did not hire or fire any of the plumbers who worked in the New York division. Def. 56.1 ¶ 14; Pl. 56.1 ¶ 14.

Plaintiffs argue that Maguire was their employer under the FLSA because (1) Maguire interviewed, hired, and supervised[4] Solomine (who was one of their supervisors), Pl. 56.1 ¶¶ 11–14; (2) two Plaintiffs lodged complaints regarding benefits, wage rates, and staffing to Maguire, *see* Frangiosa Dep. 69:14–73:2, Mar. 18,2013; Soto Dep. 61:9–62:17, Mar. 15, 2013; and (3) Maguire negotiated the contract between CCI and the DEP, Maguire Dep. 24:17–27:15, May 28, 2013, which "made Plaintiffs' pay a matter of reserve engineered math."[5] Pl. Maguire Sum. Judg. Mem. 2.

Plaintiffs' first argument supports their position that Maguire was their "employer" under the FLSA. *See Herman,* 172 F.3d at 140. In *Herman,* security guards claimed the chairman of the defendant was their "employer" under the FLSA in part because he hired their supervisors. Even though the chairman had not hired the guards themselves, the Second Circuit agreed, stating that "the fact that he hired individuals who were in charge of the guards is a strong indication of control." *Id.* The same reasoning applies here. Even though Maguire did not hire Plaintiffs, he hired Solomine, one of their supervisors, which is a strong indication that Maguire controlled them. *See id.*

Plaintiffs' second argument is substantially weaker than their first. Two Plaintiffs, Joseph Frangiosa and Rafael Soto, separately complained to Maguire directly regarding benefits, wage rates, and staffing. Because they were not receiving satisfactory answers at the lower level, the two escalated their complaints to " 'corporate' and *felt* Mr. Maguire was a suitable person to whom to direct [their] complaint[s]." Pl. Maguire Sum. Judg. Mem. 2 (emphasis added). Plaintiffs essentially argue that the two plumbers' subjective beliefs about Maguire's ability to address their complaints is evidence that Maguire was their employer under the FLSA. This argument is unavailing. *See Brock v. Mr. W Fireworks, Inc.,* 814 F.2d 1042, 1049 (5th Cir.1987) ("Subjective beliefs cannot transmogrify objective economic realities."); *Copantitla v. Fiskardo Estiatorio, Inc.,* 788 F.Supp.2d 253, 314 (S.D.N.Y. 2011) ("Diaz de la Vega's perception that

---

**4.** There is factual dispute regarding whether Maguire supervised Solomine. *See* Maguire Dep. 16:12–13, May 28, 2013 ("Q: Did Angelo Solimine [sic] ever report to you? A: No."); Solomine Dep. 27:4–11, May 29, 2013 (Q: "Who among that team, who is the pool of people who you would consider to be your superiors in the chain of command ... A: David Stetz, Clarence Pritchett, Rob Stillwell, Mike Maguire.").

**5.** Specifically, Plaintiffs argue that "Maguire agreed that CCI would install a certain num-

ber of units over a certain time period for the DEP.... Because it was a prevailing wage job, the hourly pay rate was not set by anybody at CCI—it was set by the NYC Comptroller. But, to the extent that the agreed contract set forth how many units needed to be installed in what amount of time, Maguire had more input than anyone else into the formula or equation by which Plaintiffs' pay rates would ultimately be determined." Pl. Maguire Sum. Judg. Mem. 2.

George Makris is an 'owner' does not make him an employer."); *Chao v. Vidtape, Inc.,* 196 F.Supp.2d 281, 291 (E.D.N.Y.2002), *aff'd as modified,* 66 Fed.Appx. 261 (2d Cir.2003) (citation omitted) ("[M]ost [employees] thought he was a 'boss' when asked, but this testimony is insufficient to support a definition of employer under the economic realities test."). Frangiosa's and Soto's belief that Maguire was the appropriate person to air their grievances to does not, without more, provide evidence that Maguire had the power to redress their complaints or change their schedules or conditions of employment. Indeed, Frangiosa's testimony provides little evidence that Maguire was able to meaningfully respond to his complaint. Frangiosa testified that he received "some answers from … Mr. Milton, and … Tim Wertz" and that he "started the correspondence with Mr. Mcguire [sic], and then it was taken over by Milton, their controller, a woman, I can't remember the name, and then there was another person. I think a Tim Wertz." Frangiosa Dep. 71:7–17, Mar. 18, 2013. And, Maguire testified that he merely "forwarded [Frangiosa's written complaint] to the corporate office to be addressed." Maguire Dep. 39:8–11, May 28, 2013.

However, Soto's testimony provides evidence that Maguire had some ability to address the complaints lodged with him. Soto testified that when he complained to Maguire: "[H]e heard me out and he told me that he would speak to Angelo [Solomine]." Soto Dep. 62:8–12, Mar. 15, 2013. Because Maguire stated that he would speak to Solomine about Soto's complaint, Soto's testimony indicates that Maguire had the ability to redress Soto's complaint and thus affect the schedules and conditions of Plaintiffs' employment.[6]

Plaintiffs' third argument is somewhat nonsensical. Plaintiffs contend that Plaintiffs' pay rates were ultimately determined by Maguire because he negotiated the contract that set how much work needed to be accomplished over what period of time. However, Plaintiffs acknowledge that because the DEP contract was a prevailing wage job, the hourly pay rate was not set by anybody at CCI—it was established by the NYC Comptroller. *See* Peniche Decl. ¶ 15. What the Court can glean from the record is that Maguire negotiated a contract with the DEP that set forth how many units needed to be installed in what amount of time, and it was CCI's job to meet those expectations. Maguire Dep. 24:17–27:6, May 28, 2013. Maguire noted that the number of units that needed to be installed within a given time informed how many plumbers CCI needed to hire. *Id.* at 27:3–7. Therefore, the person who chose how many plumbers needed to be hired to timely fulfill the contract controlled the plumbers' schedules and/or conditions of employment, as the number of hours worked and/or expected pace of work would necessarily fluctuate as a function of the total number of plumbers hired. However, CCI's director of field services, Yancy Emery, not Maguire, chose how many plumbers were needed to timely fulfill the contract. *Id.* at 27:8–15. Thus, Maguire neither set the rate of pay nor controlled the schedules and/or conditions of employment of the plumbers by negotiating the prevailing wage DEP contract.[7]

6. Soto's testimony is also evidence that Maguire supervised Solomine.

7. Plaintiffs also argue that in non-prevailing wage contracts, Maguire was involved in determining the hourly rate of pay for the laborers. *See* Wertz Dep. 47:2–48:21, May 29,

2013. Thus, "were the DEP contract at issue not a prevailing wage job, Maguire *would have had* the authority to set the Plaintiffs' hourly rates." Pl. Maguire Sum. Judg. Mem. 2–3 (emphasis added). This argument is meritless. Just as Plaintiffs' subjective beliefs are

■ Although this is a close case, Plaintiffs have marshalled enough evidence that, if credited at trial, demonstrates that Maguire possessed sufficient control over them, through his relationship with their supervisor Solomine, to be considered their "employer," as that term is broadly defined by the FLSA. *See Herman,* 172 F.3d at 140. Accordingly, Maguire's motion for summary judgment is DENIED.

## CONCLUSION

For the reasons stated above, Defendants' motion to decertify the conditionally certified collective action is DENIED. Plaintiffs' request for final certification is GRANTED. Plaintiffs' motion for partial summary judgment is GRANTED. Maguire's motion for summary judgment is DENIED.

The joint pre-trial order is due **October 24, 2014.** The joint pre-trial order and related submissions are to be sent as follows:

In accordance with Paragraph V.B of the Court's Individual Rules and Practices for Civil Cases, the parties shall submit a proposed joint pre-trial order to the Court by PDF attachment to an e-mail by **October 24, 2014, at 12:00 p.m.**

In accordance with Paragraphs V.C and V.D of the Court's Individual Practices, each party shall file and serve along with the joint pre-trial order all required pre-trial filings, including motions addressing any evidentiary issues or other matters that should be resolved *in limine,* joint requests to charge, joint proposed verdict forms, and joint proposed *voir dire* questions.

In accordance with Paragraph V.C(v) of the Court's Individual Practices, the parties shall deliver to the Court by **October 24, 2014,** one copy of each documentary exhibit sought to be admitted, pre-marked (i.e., labeled with exhibit stickers) and assembled sequentially in a looseleaf binder or in separate manila folders labeled with the exhibit numbers and placed in a suitable container for ready reference.

In accordance with Paragraph V.F of the Court's Individual Practices, by **October 31, 2014, at 12:00 p.m.,** the parties shall file, if necessary, any opposition to any motion in limine, and any opposition to any legal argument in a pre-trial memorandum.

Counsel for all parties shall appear for a final pre-trial conference on **December 4, 2014, at 4:00 p.m.,** in Courtroom 15D of the United States Courthouse, 500 Pearl Street, New York, N.Y. 10007.

Trial shall commence at **9:00 a.m.** on **December 8, 2014.** In accordance with Paragraph V.H of the Court's Individual Practices in Civil Cases, trial will be conducted from 9:00 a.m. to 2:15 p.m. with a break from 11:15 to 11:45 a.m.

Prior to the final pre-trial conference, counsel for both parties, along with the parties themselves, shall meet in person for at least one hour to discuss settlement of this matter. Additionally, counsel shall submit a joint letter by **September 26, 2014,** informing the Court whether they would like to be referred to a magistrate judge for settlement discussions.

The Clerk of Court is directed to terminate the motions at ECF Nos. 91, 93, and 98.

SO ORDERED.

---

not relevant to determining whether Maguire was Plaintiffs' employer, neither are hypothetical situations. Instead, "economic *realities* are determinative." *Usery v. Pilgrim Equipment Co., Inc.,* 527 F.2d 1308, 1315 (5th Cir. 1976) (emphasis added).